UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RASEAN COBLE,

                              Petitioner,

          - against -

DAVID ROCK,

                              Respondent.

12 Civ. 6587 (NSR)(PED)

**REPORT AND
RECOMMENDATION**

TO:   **THE HONORABLE NELSON ROMÁN,
        UNITED STATES DISTRICT JUDGE**

## I.  INTRODUCTION

Rasean Coble ("Petitioner"), proceeding *pro se*, seeks a writ of *habeas corpus* pursuant

to 28 U.S.C. § 2254 from his December 8, 2009 Rockland County conviction.  Petitioner was

convicted, following a jury trial, of robbery in the first degree and robbery in the second degree

(Bartlett, J.).  He was sentenced to concurrent prison terms of fourteen and five years,

respectively, and five years of post-release supervision for each crime.  This matter comes before

me pursuant to an Order of Reference dated September 11, 2012.  (Dkt. No. 7.)  For the reasons

set forth below, I respectfully recommend that the petition be **DENIED**.

## II.  BACKGROUND[1]

At approximately 11:10 p.m. on December 25, 2008, Amaury Fernandez, a Domino's

Pizza deliveryman, attempted to make a delivery to an apartment complex in Garnerville, New

York.  Upon arrival, Mr. Fernandez determined that the apartment number associated with the

---

[1] Unless otherwise indicated, the information within this section is taken from a review of
the petition ("Pet."), (Dkt. No. 2); Respondent's memorandum of law in opposition ("Resp't's
Mem."), (Dkt. No. 14); Petitioner's direct appeal briefs ("App. Br.") (attached to Resp't's Aff.,
at Ex. C) (Dkt. No. 15, at ECF attachment 1); Respondent's direct appeal briefs, at Ex. D (Dkt.
No. 15, at ECF attachment 1); the hearing, trial, and sentencing transcripts (Dkt. No. 15, at ECF
attachments 2, 3, 4.)

order did not exist, so he called the phone number provided, but it was out of service.

Outside of the building, Mr. Fernandez spoke with two men, one of whom told Mr. Fernandez that he had ordered the pizzas. After following the men down a dark set of stairs to retrieve payment for the pizzas, Mr. Fernandez saw two other men hiding in close proximity to the apartment complex's laundry room.  Although he attempted to run back up the stairs and away from the men, he only made it three or four steps before they grabbed, hit, kicked, and pistol-whipped him, and robbed him of cash, a cell phone, and the pizzas.  The men then fled through the laundry room window.  Petitioner, whose fingerprints were detected on a Domino's Pizza box found discarded nearby, was charged and convicted of robbing Mr. Fernandez.

## A.    The Arrest, Indictments, and Pretrial Proceeding

Petitioner was arrested on or about June 25, 2009 in New York City pursuant to a Rockland County Court warrant.[2]  A June 21, 2009 indictment charged Petitioner with the following offenses: robbery in the first degree, in violation of N.Y. Penal Law § 160.15(4),[3] and

---

[2] Because Petitioner was arrested in New York City, the lead detective was unsure of the exact arrest date.

[3]

A person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime: (4) Displays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm; except that in any prosecution under this subdivision it is an affirmative defense that such pistol, revolver, rifle, shotgun, machine gun or other firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged.  Nothing contained in this subdivision shall constitute a defense to a prosecution for, or preclude a conviction of, robbery in the second degree, robbery in the third degree or any other crime.

N.Y. Penal Law § 160.15 (4).

2

robbery in the second degree, in violation of N.Y. Penal Law § 160.10(1).[4]

Prior to trial, Petitioner moved to suppress Mr. Fernandez's identification testimony. Petitioner argued that police engaged in a pre-trial procedure that was unduly suggestive when they showed Mr. Fernandez a photographic array. The record contains evidence that on January 20, 2009, a detective met with Mr. Fernandez to show him a photographic array that included Petitioner's image as well as the images of five other individuals. The photographic array was prepared by Rockland County Intel and was produced in color and black and white. The detective was provided with a list of the names of all individuals in the photographic array. The detective is a certified level three Spanish-speaking officer, which is the highest possible level, and he read Mr. Fernandez, who is a native Spanish speaker, "a photographic show-up admonition" in Spanish. Mr. Fernandez signaled that he understood the admonition, had no questions, and then initialed it.[5] When shown the photographic array, Mr. Fernandez pointed to "Photo Number 2," which had an image of Petitioner, in "less than sixty seconds" and identified him as "the guy that stuck the gun in my face." There was no proof of whether Mr. Fernandez looked at the photographs of all six men. The detective relayed that no one influenced the victim to pick Petitioner. There were no other witnesses to the photographic array identification.

After a <u>Wade</u> hearing, the court concluded that the detective who showed Mr. Fernandez the photographic array did not suggest which photograph the victim should choose, and further,

---

[4] "A person is guilty of robbery in the second degree when he forcibly steals property and when (1) [h]e is aided by another person actually present." N.Y. Penal Law § 160.10 (1).

[5] Detective Devoe did not tell Mr. Fernandez to initial the document in Spanish, but Mr. Fernandez nevertheless did so. At trial, defense counsel questioned Detective Devoe about how Mr. Fernandez knew to initial the document if he was not told to do so in Spanish. Detective Devoe identified the similarity in the English and Spanish words for initials, "initials" and "initiales" respectively, as the probable reason for his properly initialing the admonition.

the array "consist[ed] of six photos of persons with similar appearance to the defendant's age, size, complexion, facial features and hair." The court credited the detective's testimony, noting that he did not prepare the photographic array and was able to talk to Mr. Fernandez in Spanish. Thus, the court held that the identification procedure was reasonable, not suggestive, and denied Petitioner's motion to suppress.

**B.**     **The Evidence at Trial**[6]

The trial began with jury selection on November 30, 2009 and lasted more than a week. The prosecution presented seven witnesses. Petitioner presented no witnesses.

Witnesses testified regarding the timing of the events on the night of the robbery. At 10:38 p.m. on Christmas night, Domino's Pizza received a call requesting a delivery of three or four pizzas to apartment 4C, 176 Ramapo Road, Garnerville, New York. After arriving at the apartment complex at approximately 11:30 p.m., Mr. Fernandez realized that no apartment 4C existed. A contact number for the person who had ordered the pizza was written on the pizza box, so Mr. Fernandez called the number but it was not in service.

Mr. Fernandez then asked a man standing in the doorway of the building if he had ordered the pizzas, and the man said that he had. The man, who was accompanied by another man, told Mr. Fernandez that he had his money downstairs, and all three proceeded down the stairs. At the bottom of the steps, there was a laundry room. Upon reaching the laundry room, two other men appeared, at which time Mr. Fernandez feared that they were going to rob him.

---

[6] Unless otherwise indicated, the information within this section is taken from a review of the petition ("Pet."), (Dkt. No. 2); Respondent's memorandum of law in opposition ("Resp't Mem."), (Dkt. No. 14); Petitioner's direct appeal briefs, at Ex. C (Dkt. No. 15, at ECF attachment 1); Respondent's direct appeal briefs, at Ex. D (Dkt. No. 15, at ECF attachment 1); and the trial record (Dkt. No. 15, at ECF attachment 2, 3, 4.)

4

He tried to run back up the stairs but they pulled him back down the stairs by his jacket and pushed him to the floor.

Mr. Fernandez testified that, after standing back up, he saw Petitioner approaching him from the laundry room while holding a brown gun. As Petitioner approached him, Petitioner "cracked" the gun and ordered him to get on to the ground. After he complied, Petitioner hit the right side of his head with the gun, and sometime after that Petitioner put on a mask. Before he did so, Mr. Fernandez saw Petitioner's face for approximately a total of fifteen seconds. The four men continued to hit him. Then, one of the men demanded his money, which totaled approximately $130, and cell phone. Mr. Fernandez acquiesced. Thereafter, Petitioner told him "to get down on the floor mother fucker" and threatened "if you get up[,] I'll shoot you." All four men then fled out of a window located in the laundry room. Mr. Fernandez ran to his car and called the police, who arrived about five minutes later.

After arriving at the crime scene, investigating officers interviewed two individuals who later testified at trial, namely Mr. Fernandez and Ms. Isauri Leon. Mr. Fernandez relayed the details of the robbery to police officers, including a description of the perpetrators. He described Petitioner as a "black male, approximately 6 foot, thin, black jacket, knitted hat and with a mask and blue jeans." At trial, Ms. Leon relayed only that she saw three men holding pizzas and running on a pathway near the crime scene some time between 11:30 p.m. and 12:00 a.m., although because of the darkness she could not see their faces.

Defense counsel cross-examined Mr. Fernandez, drawing attention to an inconsistency between his trial testimony and a pre-trial sworn statement and the plausibility of his testimony regarding the gun. One day after the crime, Mr. Fernandez signed a supporting deposition indicating that the crime occurred at 11:10 p.m, yet at trial he testified that it occurred at

approximately 11:30 p.m. Mr. Fernandez testified that "[he] d[idn]'t know why [interviewing police officers] wrote 11:10," and "for [him], [the time of the crime] was 11:30." Further, defense counsel questioned Mr. Fernandez about the color of the gun in furtherance of a defense theory that brown guns are either rare or do not exist.

Investigating officers testified regarding the physical evidence collected during the initial investigation in the early morning of December 26, 2008. There were no useable latent fingerprints at the crime scene. However, an investigating police officer found three Domino's Pizza boxes two to three hundred feet from the window out of which Mr. Fernandez saw the perpetrators leave. Further, the boxes were found in the pathway on which Ms. Leon saw the men running. A detective found useable fingerprints on one of the boxes. On January 7, 2009, Detective Devoe was informed that the fingerprints lifted from the box matched Petitioner's.[7]

Based upon this information, Detective Devoe sought out Petitioner for questioning. He went to Petitioner's grandmother's house, but Petitioner was not there. Petitioner's grandmother indicated that she thought that Petitioner was in the city with his girlfriend. In pursuit of Petitioner, Detective Devoe went to two different addresses and returned for a second time to Petitioner's grandmother's home, but all of his attempts to locate Petitioner were futile.

At trial, Detective Devoe testified that a few days after his meeting with Mr. Fernandez he applied for a warrant for Petitioner's arrest. On June 23, 2009, he was informed that Petitioner had been arrested in the Bronx. Petitioner was transferred to Rockland County later that day.

---

[7] Petitioner denies participating in the robbery, explaining that he only touched the pizza box after his dog, whom he was taking for a walk, started to eat pizza scraps. He did not testify, however, and no evidence in support of this theory was presented to the jury.

**C.**     **The Verdict and Sentence**

On December 8, 2009, the jury returned a verdict of guilty for both crimes.  (Ex. C, at 4).

Thereafter, on February 9, 2010, Petitioner was sentenced as follows: for robbery in the first

degree, fourteen years in prison, five years post-release supervision, a three-hundred and twenty-

five-dollar surcharge, a fifty-dollar DNA fee, and a DNA sample; for robbery in the second

degree, five years in prison and five years post-release supervision. Id.  Both sentences were to

be served concurrently.  Id.

**D.**     **Direct Appeal**

Petitioner appealed his conviction to the New York State Appellate Division, Second

Department, on the following grounds:

> (1)     the court erred in denying suppression of the identification evidence because
> of the unreliable eyewitness identification and the unduly suggestive
> photographic array;
> (2)     there was insufficient evidence to support Petitioner's conviction and the
> conviction was against the weight of the evidence;
> (3)     Petitioner's sentence was harsh and excessive.

(See Br. for Appellant (Ex. D).)

The Second Department affirmed the judgment on the merits in a written decision on

May 10, 2011. People v. Coble, 992 N.Y.S.2d 558 (App. Div. 2011).  Petitioner then sought

leave to appeal to the New York Court of Appeals, and leave was denied on August 12, 2011.

People v. Coble, 954 N.E.2d 94 (N.Y. 2011).  Petitioner did not seek a writ of *certiorari* to the

United States Supreme Court, nor has he sought state collateral relief.  (See Pet. under 28 U.S.C.

§ 2254 for Writ of Habeas Corpus by a Person in State Custody [unpagenated] (Dkt. No. 2)).

**E.**     ***Habeas Corpus* Proceeding**

Petitioner, *pro se*, filed a petition seeking a federal writ of *habeas corpus* on August 28,

2012.[8] (See Pet.)  In his petition, he reasserts each ground raised on direct appeal.  (See id.)

## III.  DISCUSSION

### A.    Applicable Law

"Habeas review is an extraordinary remedy."  Bousley v. U.S., 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

### 1.    *Timeliness Requirement*

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of limitations.  See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

---

[8] The petition was timely filed.  See 28 U.S.C. § 2244(d)(1).

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida, 130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have "prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing–a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

9

notwithstanding the extraordinary circumstances." <u>Valverde</u>, 224 F.3d at 134.

### 2.   ***Exhaustion Requirement***

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>see</u> § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); <u>id.</u> § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented").  The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim.  <u>Rose v. Lundy</u>, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).  "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." <u>Petrucelli v. Coombe</u>, 735 F.2d 684, 687 (2d Cir. 1984) (citing <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982)).  Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition."

Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted).  A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).  A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991).  Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277

(2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.   *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Colman, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).

### 4.   *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas* relief, the court must determine the proper standard of review under AEDPA for each of the petitioner's claims. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became effective, federal courts must apply the following standard to cases in which the state court

adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2).  The deferential AEDPA standard of review will be triggered when the state court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment.  <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001).  Where the state court "did not reach the merits of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA. . . .  Instead, the claim is reviewed *de novo*." <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009); <u>see</u> § 2254(d).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413.  A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must

ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court. . . . If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the federal claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (internal quotation marks and citations omitted).

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are presumed to be correct'"). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

**B.**   **Analysis of Petitioner's Claims**[9]

1.   *Photographic Array (Claim 1)*

Petitioner argues that the photographic array was unduly suggestive because photographic identifications are "inherently less reliable than corporeal ones." (App. Br., at 26.) Petitioner also contends that Mr. Fernandez's identification was unreliable because the victim had limited opportunity to observe and form an accurate memory of the perpetrator and because of the one month period that passed between the crime and the identification. Id. at 23-24.

---

[9] I identify the claims as I list them in Section II(D) above.

14

Respondent argues, *inter alia*, that not only does Petitioner fail to state how this particular array was unduly suggestive, but also that the photographic array was not unduly suggestive as it consisted of six people with similar appearances and features. (Resp't's Mem. at 14.) Further, Respondent contends that Mr. Fernandez's identification was independently reliable because he had a sufficient opportunity to see the perpetrator, he unequivocally identified the perpetrator within sixty seconds, and the one month period between the crime and the identification did not render the identification unreliable. (Id. at 15-16.)

Due process protects criminal defendants from suggestive police identification procedures. Simmons v. U.S., 390 U.S. 377, 384 (1968). "[G]iven the vagaries of human memory and the inherent suggestibility of many identification procedures," "intervening photographic and lineup identifications–both of which are conceded to be suppressible fruits of the Fourth Amendment violation–[may] affect the reliability of the in-court identification and render it inadmissible as well." Young v. Conway, 698 F.3d 69, 77 (2d Cir. 2009) (quoting U.S. v. Crews, 445 U.S. 463, 472-73(1980)). Whether a pre-trial identification procedure tainted an in-court identification is a mixed question of law and fact, which "translate[s] to 'mixed constitutional questions (*i.e.* application of constitutional law to fact)'" on federal *habeas* review. Overton v. Newton, 295 F.3d 270, 277 (2d Cir. 2002) (quoting Williams, 529 U.S. at 400)).

When a pre-trial photographic identification precedes an identification at trial, a court may set aside a conviction after considering it "on its own facts" only where "the photographic identification procedure was impermissibly suggestive to give rise to a very substantial likelihood of irreparable misidentification." Simmons, 390 U.S. at 384; see also U.S. v. Concepcion, 983 F.2d 369, 377 (2d Cir. 1992). "[I]n determining whether a witness's pre-trial

identification has reliability independent of unduly suggestive identification procedures," Young, 698 F.3d at n.6 (emphasis omitted), a court must consider the "totality of the circumstances," including "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation," Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Where, as here, the state adjudicated the claim on the merits and rendered a judgment, the deferential AEDPA standard of review is triggered. Therefore, the *habeas* court's review is limited to whether the state's decision "was contrary to, or involved in an unreasonable application of," Supreme Court precedent, or in the alternative, if the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2244(d)(1)-(2); see, e.g., Dunlap v. Burge, 538 F.3d 160, 164-65 (2d Cir. 2009).

The state court's decision denying suppression of the identification testimony was neither contrary to, nor involved in an unreasonable application of, Supreme Court precedent. On appeal, Petitioner argued only that the photographic array was unduly suggestive because photographic arrays are "widely recognized inherently less reliable than corporeal ones." (App. Br., at 26.) Whatever the merit of this argument, allowing an in-court eyewitness identification following a photographic identification is consistent with Supreme Court precedent. See Simmons, 390 U.S. at 384 ("Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eyewitnesses to exonerate them through scrutiny of photographs. . . . We are unwilling

16

to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement."). Here, because the use of photographic arrays is a widely accepted pre-trial procedure and Petitioner failed to allege any specific defect with the particular photographic array used by the government, the state court's denial of his claim was not contrary to, and did not unreasonably apply, federal law.

Accordingly, Claim 1 must be denied.

**2.      _Legally Insufficient Evidence and Against the Weight of the Evidence (Claim 2)_**

Petitioner contends that the evidence presented at trial was legally insufficient to establish his guilt of robbery in the first and second degrees.  Specifically, Petitioner asserts that: (1) Mr. Fernandez's testimony was unreliable; (2) it was unclear when and how Petitioner's fingerprints were deposited on the pizza box; and (3) Mr. Fernandez's testimony regarding a gun was uncorroborated, other testimony regarding the gun was inconsistent, and the gun used in the robbery was never found.  (App. Br., at 31-36.)  He also argues that the jury's verdict was against the weight of the evidence.  (Id. at 30-31.)  Respondent contends, _inter alia_, that the evidence was sufficient to establish Petitioner's guilt and that the weight of the evidence claim is not cognizable on _habeas_ review because it is a pure state law claim.  (Resp't's Mem., at 18-19.) Respondent is correct.

The Due Process Clause of the Fourteenth Amendment requires convictions to be based on "proof beyond a reasonable doubt of every fact necessary to constitute the crime which [the defendant] is charged."  Einaugler v. Supreme Court of the State of N.Y., 109 F.3d 836, 839 (2d Cir. 1997) (quoting In re Winship, 397 U.S. 358, 364 (1970)).  Yet when asserting a legal insufficiency of the evidence claim to a federal _habeas_ court, the petitioner must overcome a "twice-deferential" standard established by AEDPA.  Santone v. Fischer, 689 F.3d 138, 148 (2d

Cir. 2012) (quoting Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012)).  First, a state court must

uphold a jury's guilty verdict so long as "after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979).  Thereafter, the

federal court may only overturn the state court's decision rejecting petitioner's challenge if the

decision was "objectively unreasonable." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012)

(quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011)).  The evidence in the record must be reviewed

as a whole, Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) (citing U.S. v. Khan, 553 F.3d

507, 513 (2d Cir. 1995)), and "[t]he government's proof need not 'exclude every reasonable

hypothesis, other than that of guilt' to support a conviction." U.S. v. Carson, 702 F.2d 351, 362

(2d Cir. 1983) (quoting Holland v. U.S., 348 U.S. 121, 139-40 (1954)).  Thus, the petitioner

"bears a very heavy burden" to prevail under a claim of legally insufficient evidence. Quirama

v. Michele, 983 F.2d 12, 14 (2d Cir. 1993) (quoting U.S. v. Rivalta, 892 F.2d 223, 227 (2d Cir.

1989)).

It is well established that credibility determinations are to be made by the jury and

therefore, credibility is not reviewable by a federal *habeas* court.  See U.S. v. Kinney, 211 F.3d

13, 18 (2d Cir. 2000) (quoting U.S. v. Morrison, 153 F.3d 34, 49 (2d Cir. 1998)) ("In analyzing a

sufficiency of the evidence claim, '[w]e defer to the jury's determination of the weight of the

evidence and the credibility of the witnesses, and to the jury's choice of competing inferences

that can be drawn from the evidence.'"); see also Schlup, 513 U.S. at 330 (emphasis added)

("The Jackson standard . . . looks to whether there is sufficient evidence which, *if credited*,

could support the conviction.").  "Since it is the trier of fact that weighs the evidence, determines

credibility and draws inferences from historic to ultimate facts, a federal court, in analyzing

18

sufficiency, should not 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt,'" Mallette v. Scully, 752 F.2d 26, 31 (2d Cir. 1984) (quoting Woodby v. Immigration & Naturalization Servs., 385 U.S. 276, 282 (1966)), "[i]nstead, it stands in the shoes of the state trial court, and must consider whether a rational trier of fact could properly find or infer that the accused is guilty beyond a reasonable doubt." Mallette, 752 F.2d at 31 (citations omitted).

"When it considers the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'" Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 811 (2d Cir. 2000) (quoting Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999)). Under New York law, a person is guilty of robbery in the first degree "when he forcibly steals property and when, in the course of the commission of the crime . . . he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 160.15(4). A person is guilty of second degree robbery "when he forcibly steals property and when (1) [h]e is aided by another person actually present." Id. § 160.10(1).

Petitioner failed to establish that the state court's decision to reject Petitioner's legal insufficiency of the evidence claim was objectively unreasonable. From the evidence presented at trial, the state court could, and did, reasonably decide that, viewing the evidence in the light most favorable to the prosecution, a rational jury could have concluded that all of the essential elements were proven beyond a reasonable doubt.

First, Respondent produced an eyewitness, Mr. Fernandez, to establish Petitioner's identity as the perpetrator. Mr. Fernandez described Petitioner to the police after the crime. While Petitioner argues that the description was "vague," he does not argue that it was

19

inaccurate.  (App. Br. at 24.)  More importantly, Mr. Fernandez also identified Petitioner as the perpetrator at trial.  (Trial Tr., at 327.); see U.S. v. Danzey, 594 F.2d 905, 916 (2d Cir. 1979) (citations omitted) ("[T]he testimony of a single, uncorroborated eyewitness is generally sufficient to support a conviction."); see also U.S. v. Gonzalez, 110 F.3d 936, 941 (2d Cir. 1997) (quoting U.S. v. Roman, 870 F.2d 65, 71 (2d Cir. 1989)) ("It is well settled that where, as here, the government's case is based primarily on eyewitness testimony describing criminal activity, 'any lack of corroboration goes only to the weight of the evidence, not to its sufficiency.  The weight is a matter for argument to the jury, not a ground for reversal on appeal.'").  Thus, even without corroborating evidence, eyewitness testimony, which was presented here, generally constitutes legally sufficient evidence.  Yet, Respondent also introduced corroborating physical evidence, namely a pizza box with Petitioner's fingerprint deposited on it which police found a few hundred feet away from the window out of which the perpetrators of the robbery fled.  (Trial Tr., at 537.)  Thus, the record contains sufficient evidence to establish Petitioner's identity as the culprit.

Further, it was not objectively unreasonable for the state court to determine that the government's failure to recover the gun did not render the evidence legally insufficient.  See Jackson v. Heath, 10 Civ. 3449, 2010 WL 3075557 at *14-15 (S.D.N.Y. Aug. 6, 2010) ("police department's failure to recover the knife does not make the evidence insufficient, since there is no requirement. . . that the weapon. . . be recovered or introduced into evidence at trial"); see also Ledesma v. Cunningham, 03 Civ. 6322, 2004 WL 1775677 at *12 (S.D.N.Y. Aug. 10, 2004) (a single, uncorroborated witness's testimony was sufficient to establish the elements of assault in the second degree, which required that a person cause injury "by means of a deadly weapon or

dangerous instrument.").[10]

      Petitioner challenges the credibility of Mr. Fernandez's testimony, arguing that it was unreliable because Mr. Fernandez could only vaguely describe the perpetrator after the incident, there was a one-month time period between the crime and identification, and he did not have an opportunity to form an accurate memory of the perpetrator.  (See App. Br., at 31-36.)  These arguments are beyond the scope of review of a *habeas* court.  Perkins v. Comm'r of Corr. Servs., 218 F. App'x  24, 25 (2d Cir. 2007) ("[T]he issue of the reliability and credibility of the eyewitness testimony was properly left for the jury to determine.").

      Similarly, it was not unreasonable for the state court to hold that a reasonable jury could have found that the evidence on the record established both that Petitioner displayed a gun during the course of the crime and that he was aided by other people who were actually present. Mr. Fernandez testified that he saw Petitioner with a brown gun.  (Trial Tr., at 328.)  Further, an experienced police officer testified that brown guns do exist, he had seen one during his career, and it would be possible to spray paint a gun brown.  Id. at 520.  Likewise, Mr. Fernandez testified that the petitioner was aided by three other individuals during the attack.  See id. at 326. He testified that two men, not including Petitioner, lured him downstairs; two men, not including Petitioner, grabbed him when he tried to run up the stairs to escape; and all four took part in hitting him.  Id. at 324-332.  Also, Mr. Fernandez's testimony regarding multiple participants was corroborated by Ms. Leon's testimony relaying that she saw three people holding pizza boxes and running away from the direction of the crime scene between 11:30 p.m. or 12:00 a.m. (Id. at 439, 443).  It is within the province of the jury, and not the federal *habeas* court, to make

---

   [10]  Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009) (per curiam).

credibility and reliability determinations.  Mallette, 752 F.2d at 31.

   Further, the government was not required to rebut Petitioner's contention that his fingerprints were deposited on the pizza box in an effort to keep his dog from eating pizza scraps.  (See App. Br. at 21-22).  While Petitioner provides an alternative theory explaining how his fingerprints were deposited on the pizza box in his Appellate Brief, he presented no evidence to support the theory at trial.[11]  (See Id.).  Nevertheless, the evaluation of such alternative theories is beyond the scope of a federal *habeas* court's review.  See Bonton v. Ercole, 08 Civ. 526, 2008 WL 3851938 at *8 (E.D.N.Y. Aug. 18, 2008) ("[A]lthough petitioner offers several alternative theories to explain the forensic evidence in this case. . .  it is not the court's role to decide whether petitioner's interpretation of the forensic evidence is more appropriate than the jury's."); see also Santos v. Zon, 206 F. Supp. 2d 585, 589-90 (S.D.N.Y. 2002) (where petitioner presented alternative theory to the jury regarding his possession of drugs, and the jury later rejected it, the court did not find the denial of petitioner's insufficient evidence claim unreasonable).  Accordingly, the state court clearly acted reasonably in determining that the evidence presented at trial was legally sufficient to support Petitioner's convictions.

   Finally, it is well-established that a weight of the evidence claim is exclusively a matter of state law.  It therefore does not present a federal question reviewable by a federal *habeas* court.  See, e.g., McKinnon v. Superintendent, Great Meadow Corr. Facility, 422 F. App'x 69, 75 (2d Cir. 2011), cert. denied, 132 S. Ct. 1151 (2012) ("the argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus"); Garrett v. Perlman, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (weight of evidence

---

   [11] Evidence in the record suggests that defense counsel considered presenting Petitioner's wife as an alibi witness, but she ultimately did not testify.

claim is a state law claim arising under N.Y. Crim. Proc. Law § 470.15 and therefore does not present a federal question); Douglas v. Portuondo, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002) (a weight of the evidence claim is "an error of state law, for which habeas review is not available"); see also Estelle v. McGuire, 502 U.S. 62, 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Accordingly, Claim 2 must be denied.

## 3.  *Excessive Sentence (Claim 3)*

Petitioner argues that his sentence was excessive.[12]  (App. Br., at 38-39.)  Respondent contends, in part, that this claim fails to state a question cognizable upon federal *habeas* review. (Resp't Mem., at 20-21.)  Respondent is correct.

It is well-settled that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law."  White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992) (per curiam).  Petitioner was convicted of first-degree robbery, a class B felony, and second-degree robbery, a class C felony.  N.Y. Penal Law § 160.15; id. § 160.10.  Under New York's sentencing statutes, both offenses are classified as violent felonies.  Id. § 70.02(1)(a), (b).

---

[12] This Court construes Petitioner's submissions liberally and interprets them to raise the strongest arguments suggested.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); see also Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s]'").  Petitioner's *habeas* petition, construed liberally, can be read to also argue that his constitutional rights were violated because he was penalized for exercising his constitutional right to a trial.  However, this claim was not properly presented to state court, and thus clearly remains unexhausted.  Pet. Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") [unpaginated], 7 (Dkt. No. 2).  Further, Petitioner does not argue cause and prejudice or a fundamental miscarriage of justice that would allow this court to circumvent his procedural default and review the merits of this record-based claim.  Accordingly, to the extent that the *habeas* petition can be construed to raise such a claim, the claim must be denied as procedurally barred.

New York law permits a determinant term of imprisonment of five to twenty-five years for a class B felony, and a determinate term of imprisonment of three and one-half to fifteen years for a Class C felony.  Id. § 70.02(2) ("[T]he sentence imposed upon a person convicted of a class B or class C violent felony offense must be a determinate sentence of imprisonment which shall be in whole or half years."); id. § 70.02(3)(a), (b) (the term of a determinate sentence for a violent felony offense must be at least five years and not more than twenty-five years for a class B felony, and at least three and one-half years and not more than fifteen years for a class C felony).  Further, the court was required to impose between two and one-half and five years of post-release supervision.  Id. § 70.45(2)(f).  Therefore, no federal constitutional issue is presented where both sentences, fourteen years for first-degree robbery and five years for second degree robbery, fall within the state statutory range.

Accordingly, Claim 3 must be denied.

### III.   CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor should conclude–that the petition be **DENIED**.  Further, because reasonable jurists would not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he was denied a constitutional right, I recommend that no certificate of appealability be issued.  See 28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

Dated:
      August 9, 2013
      White Plains, New York

                    Respectfully Submitted,

                    Paul E. Davison
                    Southern District of New York

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Nelson Román, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601 and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Román.

A copy of the foregoing Report and Recommendation has been mailed to the following:

Rasean Coble, *pro se*
10-A-0736
Attica Correctional Facility
Attica, New York 14011-0149